IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| MARIE PFAU | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 1:18-CV-422-RP |
| | § | |
| STEVEN T. MNUCHIN, Secretary | § | |
| of the Treasury, in his official capacity, | § | |
| | § | |
| Defendant. | § | |

## ORDER

Before the Court is a motion to dismiss by Steven T. Mnuchin, in his official capacity as Secretary of the Treasury ("Defendant"), (Dkt. 16), and responsive briefing, (Dkts. 17, 18). Having considered the parties' submissions, the record, and the applicable law, the Court issues the following order.

## I. BACKGROUND

This case is about sex and age discrimination in employment. Plaintiff Marie Pfau ("Pfau") worked as a seasonal clerk for the Internal Revenue Service ("IRS") for nearly three months, from February 22, 2017, until May 16, 2017. (First Am. Compl., Dkt. 15, ¶¶ 14, 49). During this time, she was a 71-years-old female. (*Id.* ¶ 15). Pfau alleges that a co-worker, Mario Drumgoole, began to harass her during the first week of March 2017 after she completed her initial training. (*Id.* ¶ 21). Pfau states that Drumgoole was a "team coordinator" but claimed he was a "departmental authority figure." (*Id.* ¶ 19). According to Pfau, "Drumgoole insisted on supervising employees . . . and claimed he had the power to dismiss" them. (*Id.* ¶ 20). Although he was not Pfau's direct supervisor, he "attempted to exercise supervisory power" over her: he would "repeatedly ask [Pfau] if she had enough work to do," "examine and criticize her completed assignments," and order her "to stop working on assignments." (*Id.* ¶¶ 16–17, 22). When he did so, he "would stand so close to" Pfau that

1

he would "touch [her] at the elbow and shoulder." (*Id.* ¶ 22). Pfau claims that all of Drumgoole's supervisory actions were outside the scope of his authority and duties. (*Id.*). She also claims that he only took these "supervisory" actions against female employees. (*Id.* ¶¶ 23, 24).

Additionally, Pfau describes five specific actions she alleges demonstrate Drumgoole's harassment of her. She alleges that (1) he "interrupted" her conversation with another employee; (2) "ranted" to another employee about "old people lying up in bed," "having sexual intercourse to have children," and "receiv[ing] food stamps and Medicaid"; (3) instructed her "in a demanding tone" to get back to work while she was on her lunch break; (4) told her "to quit her job" while "clench[ing] his fists"; and (5) walked next to her down a row of cubicles while "repeatedly punch[ing] one fist into [the] other hand," "grunting," and "ma[king] eye contact" with her. (*Id.* ¶¶ 25, 30, 33, 34, 44). Pfau claims that she interpreted this last action as a "direct threat of violence" because she had recently complained about Drumgoole's behavior, and she "feared that Drumgoole would physically assault her." (*Id.* ¶ 45).

Throughout this time, Pfau alleges that she twice applied for other positions in the IRS. (*Id.* ¶¶ 14, 28, 41). She claims that she applied for the second position in order to escape Drumgoole's harassment, though she does not make a similar allegation with respect to her first job application. (*See id.*). Pfau was not selected to fill either position, however, and in both cases, she alleges that the position selection criteria were "manipulated" "specifically to exclude [her] from consideration for [the] position[s]." (*Id.* ¶¶ 32, 48).

Pfau's direct supervisor was Josephine Eller ("Eller"). (*Id.* ¶ 16). Pfau alleges that she reported Drumgoole's conduct to Eller on May 1, 2017. (*Id.* ¶ 35). She claims that Eller told her that Drumgoole was "more important" than she was, and that "nothing could be done" about his conduct despite the fact that he had been subject to prior disciplinary actions. (*Id.* ¶ 36). Nevertheless, Eller allegedly met with Drumgoole on May 3 regarding Pfau's complaints, and on

2

May 15, she issued a "managerial directive to Drumgoole instructing him to have no further communication with [Pfau] unless [he] 'had a business-related reason to do so.'" (*Id.* ¶¶ 38, 47). Pfau alleges that Drumgoole refused to sign the directive. (*Id.* ¶ 47). Two days later, she resigned. (*Id.* ¶ 49).

Based on her allegations, Pfau asserts four causes of action against Defendant: (1) sex discrimination under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000 *et seq.* ("Title VII"); (2) age discrimination under the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621 *et seq.* ("ADEA"); (3) retaliation under Title VII; and (4) retaliation under the ADEA. (*Id.* at 9–11). Defendant filed a motion to dismiss each of these claims under Federal Rule of Civil Procedure 12(b)(6). (Mot., Dkt. 16).

## II. LEGAL STANDARD

Pursuant to Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a 12(b)(6) motion, a "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The

3

tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.,* 540 F.3d 333, 338 (5th Cir. 2008) (citations and internal quotation marks omitted). A court may also consider documents that a defendant attaches to a motion to dismiss "if they are referred to in the plaintiff's complaint and are central to her claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). But because the court reviews only the well-pleaded facts in the complaint, it may not consider new factual allegations made outside the complaint. *Dorsey,* 540 F.3d at 338. "[A] motion to dismiss under 12(b)(6) 'is viewed with disfavor and is rarely granted.'" *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).

### III. DISCUSSION

#### A. Sex Discrimination

"[A] plaintiff may establish a violation of Title VII by proving that discrimination based on sex has created a hostile or abusive work environment." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66 (1986). To establish a hostile work environment claim under Title VII, the plaintiff must prove that she: (1) belongs to a protected group; (2) was subjected to unwelcome harassment; (3) the harassment complained of was based on her protected group status; (4) the harassment complained of affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action. *See Williams-Boldwar v. Denton Cty., Tex*., 741 F.3d 635, 640 (5th Cir. 2014). Defendant challenges that Pfau has failed to sufficiently plead the final three of these elements.

4

First, Defendant argues that Pfau has not alleged that the harassment she complains of was on account of her sex. (Mot., Dkt. 16, at 3). Specifically, he argues that "the only allegation of any kind that Drumgoole's behavior differed based on sex is a generalized claim that he would ask Plaintiff if she had enough work to do and criticize her work . . . which Plaintiff alleges did not occur with male employees." (*Id.*). By contrast, Defendant states that the five specific harassment actions Pfau alleges took place contain no "indication that any of [them] [were] done because of her sex." (*Id.*) (emphasis removed). Pfau counters that her specific allegations "particularize[ ]" her general claim that Drumgoole treated men and women in the department differently, and points out that she has also alleged additional specific instances in which Drumgoole harassed other women in the department. (Resp., Dkt. 17, at 4).

The Court agrees with Pfau. By reading parts of Pfau's complaint[1] selectively and in isolation, Defendant takes her specific allegations out of context. But when read cohesively in its totality, the Court finds that Pfau's complaint sufficiently pleads a sex discrimination claim. The complaint makes specific allegations about the way Drumgoole harassed women but not men. It presents factual allegations far more detailed than the "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" that are insufficient under Federal Rule of Civil Procedure 8. *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Pfau's detailed allegations about Drumgoole's harassment against women, together with the allegation that men were not harassed in the same way, imply that Drumgoole's harassment of female employers was because of their sex. *See id.* at 499 (pleading sufficient when all elements of a cause of action "are present by implication"). Accepting Pfau's factual allegations as true and viewing them in the light most favorable to her, the Court finds she has plausibly alleged that the harassment she faced was on account of her sex.

---

[1] Throughout this Order, the "complaint" refers to Pfau's First Amended Complaint. (Dkt. 15).

Second, Defendant argues that Drumgoole's alleged harassment did not affect a term, condition, or privilege of Pfau's employment. (Mot., Dkt. 16, at 3). Title VII does not impose "a general civility code for the American workplace." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998)). Thus, not all workplace conduct that may be described as "harassment" is actionable; rather, the harassment "must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Meritor*, 477 U.S. at 67 (cleaned up). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious)" are not enough; the harassment must be "extreme" to constitute an actionable change in the terms and conditions of employment. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (internal citation omitted). To make this determination, courts consider "all the circumstances" of a case, "including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 787–88 (quotation marks and citation omitted). Courts consider these factors "from the perspective of a reasonable person in the plaintiff's position." *Oncale*, 523 U.S. at 81.

The Court finds that Pfau has plausibly alleged that Drumgoole's harassment created a hostile work environment. Drumgoole's harassment was pervasive; he allegedly harassed Pfau for nearly the entire time she was employed at the IRS, from the first week of March 2017 (just after she finished her initial training) until at least May 4 or May 11 (just before she resigned). (First Am. Compl., Dkt. 15, ¶¶ 21, 43–46, 49). During this time, in addition to the five specific harassment events described, Pfau alleges that "Drumgoole would *repeatedly* ask [her] if she had enough work to do, would examine and criticize her completed assignments, and order [her] to stop working on assignments"—all while "stand[ing] so close to [Pfau's] body as to touch [her] at the elbow and shoulder." (*Id.* ¶ 22) (emphasis added). Drumgoole's alleged harassment was not only frequent; it

6

was severe: Pfau believed she was faced with threats of physical violence because Drumgoole "punched one fist into his other hand's open palm" while he "frequently grunted and repeatedly made eye contact with [her]" and had on a previous occasion "clenched his fists" while telling Pfau to "quit her job." (*Id.* ¶¶ 33–34, 44–45). A reasonable person in Pfau's position could objectively interpret these actions as a threat of physical harm, particularly in light of Drumgoole's alleged ongoing harassment and the fact that the later of these two incidents occurred just days after Pfau reported Drumgoole's behavior—for which he "complained that *he* felt like he was the one being falsely accused, intimidated and harassed." (*Id.* ¶ 39) (emphasis added). Drumgoole's harassment was severe enough that Pfau claims she suffered anxiety and insomnia from it and began taking leave from work to avoid Drumgoole. (*Id.* ¶ 46). This severity was exacerbated, moreover, by the fact that Pfau was allegedly told by her supervisor that Drumgoole was "more important" than she was, that he had already been subjected to "prior disciplinary actions," and that "nothing could be done about his behavior." (*Id.* ¶¶ 35–37).

In viewing "all the circumstances" of the case—including the frequency of Drumgoole's alleged harassment, whether it was physically threatening, and whether it impaired Pfau's ability to perform her work—and taking Pfau's factual allegations as true and in the light most favorable to her, the Court finds that she has plausibly alleged a hostile work environment. *Faragher*, 524 U.S. at 788.

Finally, Defendant argues that Pfau's sex discrimination claim should be dismissed because her supervisor took prompt remedial action once Pfau reported Drumgoole's harassment to her. (Mot., Dkt. 16, at 5). "Prompt remedial action must be reasonably calculated to end the harassment." *Skidmore v. Precision Printing & Pkg., Inc.*, 188 F.3d 606, 615 (5th Cir. 1999) (internal quotation marks and citation omitted). Eller met with Drumgoole about Pfau's complaints two days after she made them, and within twelve days she issued a directive prohibiting Drumgoole from

communicating with Pfau unless he "had a business reason to do so." (First Am. Compl., Dkt. 15, ¶¶ 38, 47). This action was not reasonably calculated to end Drumgoole's harassment, however, in light of Pfau's allegation that Eller told her that Drumgoole was "more important" than she was and that "nothing could be done about his behavior despite prior disciplinary action." (*Id.* ¶ 36). That Drumgoole refused to sign the directive further underscores Eller's statement that nothing could be done about his behavior notwithstanding prior disciplinary action. (*Id.* ¶ 47).

In sum, the Court finds that Pfau has plausibly alleged a sex discrimination claim against Defendant. The Court will deny Defendant's motion to dismiss with respect to this claim.

### B. Age Discrimination

Pfau also claims that Drumgoole and two officials responsible for selecting candidates for employment discriminated against her because of her age. To establish a hostile work environment claim based on age discrimination under the ADEA, a plaintiff must show that (1) she was over the age of 40; (2) she was subjected to harassment based on her age; (3) the harassment created an objectively intimidating, hostile, or offensive work environment; and (4) there exists some basis for liability on the part of the employer. *Dediol v. Best Chevrolet, Inc.*, 655 F.3d 435, 441 (5th Cir. 2011). With respect to Drumgoole, the parties dispute whether Pfau has satisfied the second, third, and fourth elements. The Court finds that Pfau has failed to satisfy the third element and therefore will not address the second or fourth elements.

As with sex discrimination claims based on a hostile work environment, "isolated incidents (unless extremely serious)" do not constitute "discriminatory changes in the terms and conditions of a worker's employment." *Reed v. Neopost USA, Inc.*, 701 F.3d 434, 443 (5th Cir. 2012) (citation omitted). In contrast to Pfau's sex discrimination claims, she identifies only one incident of alleged age discrimination by Drumgoole: a "rant" to a co-worker that "old people l[ie] up in bed," "hav[e] sexual intercourse to have children," and "receive food stamps and Medicaid." (First Am. Compl.,

8

Dkt. 15, ¶ 30). Pfau's sex discrimination claim is supported by several specific instances of harassment she claims "particularize" her general allegation that Drumgoole supervised women differently from men. (Resp., Dkt. 17, at 3). But she does not allege that these several specific instances of harassment are connected to her age discrimination claim, and she does not allege similar specific facts with respect to those claims. Instead, Pfau simply characterizes her complaint as alleging that "Drumgoole harassed women, and he harassed three women . . . who are all over the age of 40." (*Id.* at 6). But so characterized, the complaint still does not allege that Drumgoole harassed Pfau or the other two women *because of* their age. Nothing in the complaint, moreover, implies that any of Drumgoole's harassment activities other than his rant about old people were taken on the basis of age. No allegation analogous to the one that Drumgoole "supervised" women differently from men appears with respect to age.

Turning to the two "selecting officials" who did not select Pfau for the two positions to which she applied, Pfau alleges that the officials "manipulated the position selection criteria" for the two positions "specifically to exclude [Pfau] from consideration" on account of her age. (First Am. Compl., Dkt. 15, ¶¶ 32, 48). Pfau offers no elaboration for these allegations; she merely states in conclusory fashion that "Defendant . . . maintain[s] a policy of age discrimination" and that if she were not over 40, she would not have had her employment applications denied. (*Id.* ¶¶ 56–57). With no specific facts alleged to support these claims and nothing in the complaint to plausibly suggest that age is the reason why Pfau or anyone else was not selected for the jobs to which they applied, Pfau's claim that the selecting officials discriminated against her because of her age is unsupported speculation. The Court therefore finds that Pfau has failed to allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" with respect to her age discrimination claim. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

In sum, the Court finds that Pfau has failed to plead specific facts from which the Court could draw a reasonable inference that she was plausibly discriminated against on the basis of her age. With respect to her age discrimination claim, the Court will grant Defendant's motion to dismiss.

**C. Retaliation**

Pfau also claims that she was retaliated against on the basis of sex in violation of Title VII and on the basis of age in violation of the ADEA. To establish a claim for retaliation under Title VII, the plaintiff must show that (1) she engaged in a protected activity; (2) there was a materially adverse action; and (3) a causal connection exists between the protected activity and the adverse action. *Jenkins v. City of San Antonio Fire Dep't*, 784 F.3d 263, 269 (5th Cir. 2015).[2] Similarly, to establish a claim for retaliation under the ADEA, the plaintiff must show that (1) she engaged in a protected activity; (2) there was an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse action. *Holt v. JTM Indus., Inc.*, 89 F.3d 1224, 1226 (5th Cir. 1996). The only adverse action Pfau alleges with respect to her retaliation claims is that she was constructively discharged. (*See* First Am. Compl., Dkt. 15, at 10–13; Resp., Dkt. 17, at 8). As

---

[2] Defendant argues that "the Fifth Circuit does not recognize a cause of action for a retaliatory hostile work environment or harassment claim under Title VII." (Mot., Dkt. 16, at 9 (citing *Heath v. Bd. of Supervisors for S. Univ. & Agric. and Mech. Coll.*, 850 F.3d 731, 741 n.5 (5th Cir. 2017))). But the Fifth Circuit—and the Supreme Court—recognizes that Title VII creates a cause of action for unlawful retaliation under Title VII. *See Jones v. Flagship Int'l*, 793 F.2d 714, 729 (5th Cir. 1986) (finding that plaintiff established a prima facie case of unlawful retaliation under Title VII § 704(a)); *Burlington*, 548 U.S. at 56 ("A separate section of [Title VII]—its antiretaliation provision—prohibits an employer from 'discrimat[ing] against' an employee or job applicant because that individual 'opposed any practice' made unlawful by Title VII or 'made a charge, testified, assisted, or participated in' a Title VII proceeding or investigation.") (citing 42 U.S.C. § 2000e-3(a)). Defendant's cited case is not to the contrary; it simply points out that the Fifth Circuit—alone among the circuit courts—does not recognize retaliation as a basis for making a hostile work environment claim, as opposed to a hostile work environment claim "based on discrete acts." *Heath*, 850 F.3d at 731 (citing *Bryan v. Chertoff*, 217 F. App'x 289, 293 (5th Cir. 2007) (acknowledging that plaintiff "asserts a hostile work environment that was retaliation for his protected activity" but not deciding to recognize such a "retaliatory hostile work environment claim")). Pfau appears to bring her Title VII retaliation claim as a cause of action separate from her Title VII discrimination claim. (*See* First Am. Compl., Dkt. 15, at 9–10). The Court therefore construes her retaliation claim as a distinct cause of action under 42 U.S.C. § 2000e-3(a), rather than as a basis for her § 2000e-2(a) hostile work environment cause of action, for which she alleges several discrete instances of harassment.

explained below, the Court finds that Pfau has not sufficiently pleaded that she was constructively discharged. Accordingly, her retaliation claims must fail.

Pfau resigned from her job on May 17, 2017, because she was "afraid that Drumgoole would assault her and that management would continue to do nothing to discipline [him]." (First Am. Compl., Dkt. 15, ¶ 49). A resignation may constitute an adverse employment action for purposes of a retaliation claim if it qualifies as a constructive discharge. *Brown v. Liberty Mut. Grp., Inc.*, 616 F. App'x 654, 657 (5th Cir. 2015) (quoting *Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5th Cir. 2001)). A constructive discharge occurs when "an employer discriminates against an employee to the point such that his working conditions become so intolerable that a reasonable person in the employee's positions would have felt compelled to resign." *Green v. Brennan*, 136 S. Ct. 1769, 1776 (2016) (internal quotation marks and citation omitted). In the Fifth Circuit, courts consider six factors to determine whether a reasonable employee would feel compelled to resign: (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (6) offers of early retirement that would make the employee worse off whether or not the offers were accepted. *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 481 (5th Cir. 2008). "Constructive discharge requires a greater degree of harassment than that required by a hostile environment claim," and "[d]iscrimination alone, without aggravating factors, is insufficient for a claim of constructive discharge." *Brown*, 237 F.3d at 566 (internal citations omitted).

Based on Pfau's allegations, only the fifth factor is applicable here. But under this factor, "an employee must offer evidence that the *employer* made the employee's working conditions so intolerable that a reasonable employee would feel compelled to resign." *Ward v. Bechtel Corp.*, 102 F.3d 199, 202 (5th Cir. 1997) (quoting *Barrow v. New Orleans S.S. Ass'n*, 10 F.3d 292, 297 (5th Cir. 1994)) (emphasis added). Pfau applies this factor to Drumgoole and Eller. (*See* Resp., Dkt. 17, at 10–

11

11). But Drumgoole was not Pfau's employer, and nothing in complaint suggests that Pfau considered Drumgoole to be her employer or that she thought he exercised employment authority over her. Indeed, although Drumgoole "insisted on supervising employees" and "claimed he had the power to dismiss" them, Pfau alleges that Eller was her direct supervisor, and she complained to her about Drumgoole's inappropriate "supervision" of her work, which he did "outside the scope of his authority and duties." (First Am. Compl., Dkt. 15, ¶¶ 16, 20–22, 35). With respect to Eller (assuming that she qualifies as Pfau's "employer"), Pfau's claim that she failed to take "any significant action to stop Drumgoole's ongoing harassment or protect her from Drumgoole's violent threats," (Resp., Dkt. 17, at 11), is nowhere alleged to be "calculated to encourage [Pfau's] resignation," *Aryain*, 534 F.3d at 481. Thus, even when viewed in the light most favorable to the plaintiff, Pfau has not alleged any facts demonstrating the presence of aggravating factors necessary to support her constructive discharge claims. Because she alleges no other adverse action in connection with her retaliation claims, the Court finds that those claims should be dismissed.

## IV. CONCLUSION

For these reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's motion to dismiss. (Dkt. 16). With respect to Count I, Pfau's sex discrimination claim under Title VII, (First Am. Compl., Dkt 15, at 9), Defendant's motion is **DENIED**. With respect to Counts II–IV, Pfau's age discrimination claim under the ADEA and her retaliation claims under Title VII and the ADEA, (*id.* at 9–11), Defendant's motion is **GRANTED**. Pfau's age discrimination and both retaliation claims are **DISMISSED**.

**SIGNED** on May 15, 2019.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE